No. 31,091.

BERT DAMITZ, *Appellee*, v. B. H. CHRISTIAN, *Appellant*.

(21 P. 2d 324.)

Opinion filed May 6, 1933.

*P. E. Nulton* and *G. L. Stevenson,* both of Pittsburg, for the appellant. *Frederick G. Apt* and *A. R. Enfield,* both of Iola, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained by plaintiff, and for damages to his automobile in a collision with defendant's tank truck.

According to plaintiff's evidence the accident occurred at an intersection of two streets in Gas City, a small town in Allen county. One of these streets, which runs east and west, is known as U. S. highway No. 54. The post office is situated on the south side of this street. McRae street intersects No. 54 at right angles thereabouts. About five o'clock p. m., on June 24, 1931, plaintiff parked his car in front of the post office while he called for his mail. Then he got

into his car, started his motor, looked west and saw that the way was clear. Then he proceeded northwest across highway 54 towards McRae street. While thus engaged defendant came from the west driving his tank truck at high speed. He saw plaintiff and his car halfway across the road and apparently hesitating as if about to stop, so he decided to pass to the east on the north side of No. 54, but when it became apparent to him that plaintiff did not intend to stop, defendant endeavored to turn his truck northward into McRae street, but his speed and momentum were so great that his truck turned over, striking and crushing plaintiff's car and severely injuring him.

Plaintiff's petition charged negligence on the part of defendant by operating his truck at excessive and dangerous speed, with reckless disregard of the safety of other users of the highway, and in violation of the city speed ordinance.

Defendant pleaded a general denial and contributory negligence.

The jury returned a general verdict for plaintiff for $2,800 and answered certain special questions:

"1. Did the plaintiff, Bert Damitz, see defendant's truck approaching from the west before plaintiff drove onto the concrete slab? A. No.

"2. Did plaintiff, at or immediately before driving onto concrete slab, look to the west for approaching cars on highway No. 54? A. Yes.

"3. For how great a distance can a person sitting in a car at the point where plaintiff's car was parked just prior to his driving onto the concrete slab, see a vehicle approaching from the west on highway No. 54? A. 576 and ½ feet.

"4. What, if anything, prevented plaintiff from having a full and unobstructed view of defendant's truck as it approached from the west? A. Nothing.

"5. Did plaintiff stop or slow down his car momentarily while he was crossing the concrete slab? A. Yes. Slowed down momentarily.

"6. If you answer question No. 5 'Yes' or in the affirmative, then state:

"(a) The distance between defendant's truck and plaintiff's car at the time plaintiff stopped or slowed down. A. 80 to 100 feet.

"(b) The rate of speed defendant's truck was traveling at the time the plaintiff stopped or slowed down. A. 30 to 35 miles per hour.

"7. If you find the defendant guilty of negligence because of injury and damage to plaintiff, state the acts or act of negligence of which the defendant was guilty. A. Excessive speed."

Motions for judgment and for a new trial were overruled, and judgment was entered for plaintiff.

Defendant specifies various errors, in the first of which he makes the contention that plaintiff's testimony and the special findings show that plaintiff was guilty of contributory negligence. Accord-

ing to that evidence and the findings, the distance towards the west in which an approaching vehicle could be seen was 576.5 feet. Beyond that distance the highway disappeared over the brow of a hill. Defendant stresses the jury's finding 4 that there was nothing to prevent plaintiff from seeing defendant's truck as it approached from the west. But that finding must be read in conjunction with the other findings. From these it is found that plaintiff did look to the west immediately before he started to cross the highway and that he did not see plaintiff's truck at that time. The fair inference from those findings is that when he did look defendant's truck had not yet appeared at the brow of the hill. Seeing nothing coming from the west, there was no apparent urgency for haste in crossing the highway, and, according to the evidence to which the jury gave credence, defendant must have been driving at a very high and unreasonable rate of speed. Indeed, he was still speeding pell mell toward the center of that little town at 30 to 35 miles per hour when only 80 to 100 feet away, when he first saw plaintiff in the middle of the street. One witness testified:

"I observed tracks on the pavement. The pavement was marked where the rubber had burned from the tires where he [defendant] skidded his wheels from putting on his brakes. I stepped that distance, thirty-six steps from where the brakes were applied to the back of the truck. I generally step three feet in a step. It would be about 120 feet."

Defendant would attach much significance to the fact that plaintiff slowed down momentarily while crossing the highway. It does not appear why that fact should convict plaintiff of contributory negligence. Probably he was changing gears, at which instant many cars "slow down momentarily." He may have sensed the approach of danger and hesitated as to the best way to meet it, by halting or going ahead. Plaintiff himself cannot explain this incident. He knows nothing about it. His testimony reads:

"My car was headed just a little northwest and I drove across the slab and just as my front wheels went up on the sidewalk I saw the radiator and the head-end of a car and that is all I can tell you. . . . It was then I discovered this car coming right at me. I just saw the radiator and hood. I can't tell you what happened then. They carried me to the hospital and I waked up the next morning and that is all I can tell you."

Without rehearsing the contents of the record at greater length it seems clear that neither the jury's special findings nor the evidence established plaintiff's contributory negligence as a matter of

law. (*Brunson v. Shell Petroleum Crop.*, 137 Kan. 133, 19 P. 2d 455.)

Error is next assigned on instruction No. 12, in which the trial court told the jury, among other matters, that a motorist about to cross highway 54, which was a paved street bearing much traffic, was required to use greater caution than he would have to exercise in crossing a dirt street like McRae which had but relatively little traffic. Included in this instruction was the following:

"However, in arriving at the question upon whom rested the greater burden of caution, you should not speculate or arrive at your conclusions by comparison, but take the situation and the condition and the manner in which the collision occurred and what brought it about, solely and only from the evidence as your guide."

Defendant contends that the quoted part of this instruction was erroneous in that it required the jury to determine upon which party rested the greater burden of caution, and that "the doctrine of comparative negligence is not recognized in this state." We think this criticism of the instruction is rather technical, but it certainly was not prejudicial to defendant. Plaintiff was the one who was crossing the paved road. According to this instruction the greater duty of caution rested on him, not on the defendant, who was proceeding along the paved highway. The error assigned on this instruction cannot be sustained.

A third error is based on the trial court's refusal to give an instruction formulated by defendant to define an accident in which no one is at fault. There was no such issue in this lawsuit; consequently it was not erroneous to ignore it.

Error is also predicated on the rejection of a requested instruction which read:

"You are instructed that it is the duty of the driver of a motor vehicle, before entering or driving into or across a public highway, to look up and down said highway, in each direction, to ascertain whether or not he can safely enter and cross said highway without a collision with other vehicles, and you are instructed that if you find from the evidence in this case that plaintiff, Bert Damitz, did not so look before entering and driving onto the highway, and that his failure to so look contributed to produce the injury, then he would be guilty of contributory negligence, and he cannot recover therein."

This was a fair statement of pertinent law, but we think it was sufficiently covered by the instructions which the court did give, particularly in the 8th, 9th and 11th, too long for reproduction here.

Yet another error is urged on the trial court's refusal to submit a special question to the jury which read:

"Q. 8. Were the injuries and damage suffered by the plaintiff the result of an accident, as defined to you in the court's instructions?"

We think the fact sought to be elicited by this question was sufficiently developed by the jury in their answer to special question No. 7, quoted above, and in their general verdict.

The judgment is affirmed.